No. 7555.

LOVE ET AL. *v.* PAYNE.

PARTNERSHIP.—*Partner's Interest.*—A third person can not, by buying the interest of one partner, become a member of the firm, unless all the partners consent.

Love *et al. v.* Payne.

SAME.—The admission of a partner into a firm is not within the line of the partnership business.

SAME.—*Power of Member to Bind Firm.—Contract.—Sale of Partner's Interest.—Ratification.- Instruction.*—B., a member of a partnership and its business manager, contracted with A., that, if he would buy a retiring partner's interest, and pay the balance due upon such partner's share of the capital stock, he should receive a certain interest in the partnership property, free from all liens. Afterward, all the partnership property was sold upon a prior mortgage. Suit by A. against the firm for breach of the contract.

*Held,* that B. had no authority to make such contract.

*Held,* also, that, unless the partners had knowledge thereof, they were not bound.

*Held,* also, that the mere coming of A. into the firm, and the payment of money into the capital stock, are not, of themselves, sufficient to charge the firm with knowledge of such contract.

*Held,* also, that it was error to instruct the jury that the firm would be bound by accepting the benefits of the contract.

*Held,* also, that, by receiving A., and taking his money, into the firm, they did not ratify that stipulation of the contract, of which they were ignorant, guaranteeing a perfect title, it not being incident to, or implied in, the admission of A. as a member of the firm.

SAME.—*Agency.—Ratification.*—Ratification, where there is no express notice, can not extend beyond an adoption of the acts of the agent to the extent fairly and reasonably implied from the nature of the transaction.

From the Clay Circuit Court.

*G. A. Knight, C. H. Knight* and *I. M. Compton,* for appellants.

*W. W. Carter* and *S. D. Coffey,* for appellee.

ELLIOTT, J.—The Limited Liability Coal Company was the firm name of a partnership, of which all the appellants were members, and this action was instituted by the appellee against the appellants as members of said partnership. The complaint alleges that the said company entered into a contract with appellee, wherein it was agreed that in consideration of appellee's purchase of the interest of one William Blair, and payment of a certain sum into the partnership, he should be admitted as a partner, and that he should

VOL. 73.—6

receive a one-fourteenth interest in said partnership property, free from all liens. The breach assigned is that he did not receive such interest, but that the firm suffered all the partnership property to be sold upon a prior mortgage, and that he really received nothing at all of value.

The only assignment of error discussed is that based upon the ruling denying a new trial. The appellants insist that they are entitled to a new trial because of erroneous instructions given the jury.

A very brief synopsis of the evidence will be sufficient to exhibit the questions presented upon the instructions. The appellants were all members of the partnership. John Elliott was the president and general business manager of the company. The company was engaged in the business of mining and selling coal. William Blair was a member of the firm, and appellee bought his interest. The appellee did contract with John Elliott, that if he, appellee, would buy Blair's interest and pay into the partnership $285.00, he should receive one-fourteenth interest in the partnership property, free from all liens, and this agreement was made by Elliott while assuming to represent the firm. There was a breach of the contract. We have stated the general effect of the evidence in the form most favorable to the appellee, in order that the legal questions presented by the instructions may be plainly exhibited.

The second instruction asked by the appellee and given by the court is as follows: "If you should find from the evidence, that one John Elliott was a member of the Limited Liability Coal Company, and was acting as president of said company, and while so being a member thereof, and acting as such president, he made a contract with the plaintiff on behalf of said company, whereby the plaintiff became a member of said firm, and in consideration thereof it was agreed that the plaintiff should pay into said firm a given amount of money, and that said company received the plain-

tiff as a member of said company, and accepted the benefits of said contract, they can not hold the benefits and at the same time deny the authority of said Elliott to make the same.''

This instruction does not assert, as appellants affirm, that Elliott had a right to bind the partnership ,because of the authority derived from his relationship to his co-partners. If it did, it would be clearly enough obnoxious to the objections pressed against it. The proposition is, not that Elliott had, as partner, a right to make the contract, but that, because the firm received and appropriated the benefits resulting from the act of one assuming to represent the partnership, the partners are liable. The admission of a partner into a firm is not within the line of partnership business, and Elliott would have no authority, as partner, to contract with appellee, that, if he would come into the firm, the partners would vest in him a title to one-fourteenth of the partnership property, freed from all liens. It is an elementary rule, that a third person can not, by buying the interest of one partner, become a member of the firm, unless all the partners consent.

Regarding the instruction as declaring that the partnership was bound by Elliott's acts, not because he was a member thereof, but because he preferred to act for the firm, and the fruits of·his acts were received and enjoyed by the partnership, it must still be declared to be erroneous. It is erroneous because it leaves out of consideration the essential element of knowledge on the part of the members of the partnership. The mere coming of the appellee into the firm, and the payment of money into the capital stock, would not, of itself, charge the firm with knowledge of the agreement that he should receive one-fourteenth of the property, free from all ·incumbrance. The natural inference, in the absence of notice, would be the reverse ; for the reasonable conclusion would be, that he stepped into the place of the

partner whose share he bought, taking with it all its bur-
dens. and benefits.    The instruction broadly asserts that the
partnership would be bound by accepting the benefit of the
contract, and no mention is made of notice or knowledge,
on the part of the partners, of the contract of the president
and agent, to vest in the incoming partner a title to one-
fourteenth of the property, free from the liens then known
to exist.  The only benefit which the partnership got, or
could have got, from the appellee, was the payment of the
balance due upon Blair's share of the capital stock of the
partnership.    If Blair had remained a member, he could
have been compelled to pay it, and Payne did no more than
what his vendor, the retiring partner, was bound to do.
Unless the partners had knowledge of the contract under
which Payne came into the firm, they can not be deemed to
be bound because the former paid his proportionate share of
the common contribution to the capital stock.    The benefits
which the partnership retained were only those which Payne
would have been bound to yield as a right to admission,
and, without some knowledge of a contract, made by a pro-
fessed agent, giving Payne a right to look to the partner-
ship to convey to him a perfect title to a part of the partner-
ship property, such a contract ought not to be held obliga-
tory upon the partnership. The partners can not be bound,
unless they retained the money after knowledge that a.
professed agent had, in their behalf, agreed to give the in-
coming partner an additional or distinct consideration from
that arising from the sale to him of the retiring partner's.
interest, and his admission as a member of the firm.

The appellants, by accepting Payne as a co-partner, and
by receiving into the common fund his money, did, un-
doubtedly, ratify to some extent the acts of Elliott, but not
to the extent declared by the instruction.   The ratification
implied from such acts can not be so extended as to cover a.
distinct and independent contract made by the agent and of

which the principals had no knowledge.   If such a contract was one implied in the admission of Payne into the firm, or was an ordinary incident of such a transaction, then the doctrine of ratification might apply.   But the contract upon which the appellees seek a recovery was not implied in, nor incident to, the purchase of Blair's interest and Payne's admission into the firm.   By receiving Payne, and taking his money into the common fund, appellants did not ratify a contract of which they were utterly ignorant, and which was not incident to, nor implied in, the admission of Payne as a member of the partnership.   The agreement of Elliott, guaranteeing, as in effect it did, that the appellee should receive a perfect title, was totally distinct from the purchase of Blair's interest, and Payne's admission as a partner in his stead, and could not be implied from Payne's coming into the partnership and paying his money into the common fund.   Ratification, where there is no express notice, can not extend beyond an adoption of the acts of the agent, to the extent fairly and reasonably implied from the nature of the transaction ; and, in this case, the nature of the transaction would have indicated nothing more than that Payne had taken Blair's place in the firm.   To this extent only can it be said that retaining in the common fund the amount paid by Payne is a ratification of Elliott's acts.

Other questions are discussed, but, as the cause must be remanded for a new trial, we deem it unnecessary to consider them.

Judgment reversed, at costs of appellee.