No. 17,056.

METZGER v. HUNTINGTON, TRUSTEE.

AGENCY.—*Authority of Agent.*—*Ratification.*—*Party Dealing With One Assuming to be Agent Put on Inquiry as to His Authority.*—*Adverse Interest of Agent.*—*Conveyance.*—*Deed.*—*Assumption Clause.*—*Real Estate.*—*Pleading.*—*Defects Not Cured.*—L. and W. entered into a contract with H., December 14, 1887, by which they agreed to purchase certain land of H. for $45,000. L. and W. were to execute mortgages on the several lots into which the land was to be platted, which were to be first liens on the several lots, the mortgages to bear date January 1, 1888, L. and W. agreeing to assume these mortgages as a part of the purchase-price, and agreeing to expend $8,000 in one year, in platting and improving the tract, etc., H. to furnish them a deed and take the mortgages, as agreed to, as soon as the plat was recorded and the improvements made. L., desiring to dispose of his interest, employed W. to procure a purchaser. W. sold L.'s interest for $12,500, to M., June 9, 1888. June 11, 1888, L. sold his contract with M. to W. On October 20, 1888, by agreement among H., L. and W., M. not being present, H. made a deed for all the land to J., acting as third party, or go-between. J. executed and acknowledged the plat, and then executed to L. notes for $45,000, with specific mortgages on the several lots. L. indorsed the notes to H., and J. also executed a deed to W. for the whole tract, which contained the clause: "Subject, however, to mortgages bearing even date herewith, * * aggregating $45,000 of principal, which the second party assumes and agrees to pay." W. executed a deed to M. for an undivided one-half of the plat (the relation existing between W. and M. being that of tenants in common, and not that of partners), with assumption clause as follows: "Subject to incumbrance by mortgage of even date herewith, aggregating $43,650 and accrued interest, * * which the second party assumes and agrees to pay as his interest proportionately appears," which deed W. placed on record and notified M. thereof, M. never having seen the deed, and not knowing that it was to come from W., as his contract was with L., and having no knowledge that the deed contained the assumption clause. M. from time to time sent to W. his proportion of the expense of improving the property, also money to pay his share of the interest on the mortgage debt, and his taxes, and joined with W. in making deeds for three lots. In February, 1890, H. notified M. that the interest being unpaid the whole debt had become due, and also drew his attention to the assumption clause in his deed from W., which was the first intimation M. had of such clause fixing his personal liability for the debt, believing he had bought the property subject simply to the mortgage debt. H. brings suit against M. on the assumption clause.

Metzger v. Huntington, Trustee.

*Held*, that W. could not, in his own interests, make a deed to M. placing a heavy obligation upon M. in so doing, and then, as agent for M., accept the deed, with its obligation, putting the whole on record without M. ever seeing the deed or knowing its contents.

*Held*, also, that the interests of W. were so opposed to M.'s, in this transaction, that H. was put upon inquiry to know that M. had really agreed to the assumption of the debt, and that so momentous a matter should not have been left dependent on a statement of W., whose own interests in it were so great.

*Held*, also, that if W. were a general or special agent of M. in the care and management of their property, which does not appear from the facts pleaded, still that would not be enough, especially in view of the adverse interests of W., to warrant H. to take it for granted that W. was vested with the extraordinary power to assume (in M.'s name, and so as to bind him) the personal obligation to pay a debt of $25,000.

*Held*, also, that as there are no facts pleaded showing that W. was M.'s agent for any purpose, much less that he had authority to insert the assumption clause in the deed, and no facts from which such authority could be inferred, the verdict finding the fact of agency can not cure the pleadings in this respect.

*Held*, that ratification, like agency itself, must be clearly and affirmatively established by him who relies upon agency or ratification for the enforcement of his claim.

*Held*, that M.'s claim of ownership of the property, his joinder in execution of deeds for lots, and his payment of his part of expenses, taxes, and interest, did not amount to ratification of the assumption clause, and were not incompatible with his title as tenant in common by a deed conveying the lands subject to the mortgages, none of which were done after he learned of the assumption clause in the deed, but which assumption clause he repudiated as soon as he learned of its existence, and reconveyed the property to W., abandoning about $17,000 which he had invested in it.

Opinion on petition for rehearing by HOWARD, J.

### From the Miami Circuit Court.

*A. G. Smith, W. A. Ketcham, L. H. Bisbee, Q. A. Myers, S. T. McConnell, A. G. Jenkins* and *J. C. Nelson,* for appellant.

*D. D. Dykeman, W. T. Wilson, G. C. Taber, M. Winfield, J. Mitchell, L. O. Bailey* and *J. Taber,* for appellee.

HOWARD, J.—On the 14th day of December, 1887, the appellee, acting for himself and the other heirs of Jonas

Huntington, deceased, entered into a contract with Frank E. Little and Lawrence H. Wilson, according to the terms of which Little and Wilson were to purchase of appellee about two hundred acres of land, situated on Wayzata Bay, Lake Minnetonka, in the State of Minnesota, for the sum of fifty thousand dollars. This land was to be platted into lots, four of which were to be retained by appellee, for which five thousand dollars were to be allowed as part payment of the purchase-price, leaving forty-five thousand dollars due. The forty-five thousand dollars were to be distributed as first mortgage liens on the several lots into which the ground should be platted, the mortgages to bear date January 1, 1888, to be due and payable in five years from date, except the sum of five thousand dollars which was to be payable in one year from date. Little and Wilson agreed to assume these mortgages as a part of the purchase-price. They also agreed to expend within one year eight thousand dollars in the platting and improving of the tract, and to pay certain claims already due for work upon the ground, not to exceed eighteen hundred dollars. As soon as the plat was recorded and the improvements made, the appellee was to furnish them a deed and take the specific mortgages, as agreed to.

Little and Wilson took possession under the contract, and began the improvements. According to the terms of the contract, it would seem that they were tenants in common, and not partners, and it appears from the record that this cause finally proceeded upon that theory, although the partnership theory was at first also suggested.

About June 1, 1888, Little desired to sell his interest, and employed Wilson to procure a purchaser. Wilson had done business for Hardy & Metzger, of Logansport, Indiana, manufacturers of linseed oil, and went to

Logansport where he succeeded in selling Little's interest to William G. Metzger, the appellant, for twelve thousand five hundred dollars. Little paid Wilson five hundred dollars for this service. Little's contract with Metzger was dated June 9th; on June 11th Little sold this contract to Wilson for ten thousand five hundred dollars and one of the lots. On July 24, 1888, Wilson assigned the Metzger contract to one Cotton as collateral security on a loan. It does not appear that Metzger knew of either of these assignments.

Metzger at first paid five hundred dollars on his contract, afterwards sending six thousand, and finally, about the first of October, the remaining six thousand. On making the last payment, he received back his contract, and tore it up. Afterwards, on learning from Wilson that his deed for the Little interest was executed and on record, he destroyed his duplicate of the same contract.

On October 20, 1888, by agreement of Huntington, Little and Wilson, Metzger not being present, Huntington made a deed for all the land to one Johnson, acting as third party, or go between. Johnson executed and acknowledged the plat, to be known as Arlington Hights, and then executed to Little notes for the forty-five thousand dollars, with specific mortgages on the several lots. The notes were indorsed by Little to Huntington. Johnson also executed a deed to Wilson for the whole tract. In this deed was inserted the following clause: "Subject, however, to mortgages bearing even date herewith, and recorded this day in the office of the register of deeds in and for said county, aggregating forty-five thousand dollars of principal, which the second party assumes and agrees to pay." Wilson likewise executed a deed to Metzger for an undivided one-half of the plat, in which was also inserted an assumption clause,

as follows: "Subject to incumbrance by mortgage of even date herewith, aggregating the sum of forty-three thousand six hundred and fifty dollars, and accrued interest thereon from January 1, 1888, which the second party assumes and agrees to pay as his interest proportionately appears." All the deeds, mortgages, and the plat were placed on record the same day, except Wilson's deed to Metzger, which Wilson retained until October 22, that he might in his own name make deeds for certain lots, after which he placed Metzger's deed also on record, and notified Metzger that this was done. Metzger did not see the deed, and it does not appear that he knew that the deed was to come to him from Wilson, as his contract was with Little. Huntington was present and approved all deeds and other papers.

Metzger from time to time sent to Wilson his proportion of the expense of improving the property, also money to pay his share of interest on the mortgage debt, and his taxes.

On December 31, 1888, Wilson voluntarily, for reasons which do not appear, executed another deed to Metzger, being substantially the same as that made October 20, and placed it on record also without sending it to Metzger.

Metzger joined with Wilson in making deeds for three lots sold. The enterprise proved a failure, and the interest for January, 1890, was not paid. In February, 1890, Huntington notified Metzger that the interest being unpaid the whole debt had become due, and also drew his attention to the assumption clause in his deed from Wilson. Metzger claims that this was the first intimation received by him that he was in any way personally liable for the debt, and that up to that time he believed that he had bought the property subject simply to the mortgage debt, and that he might at any time

Metzger v. Huntington, Trustee.

abandon the enterprise, losing only what he had in-vested, being then about seventeen thousand dollars.

On May 13, 1890, Metzger made a deed back to Wilson for his interest in the property, reciting that the deed was intended to reinvest in Wilson the lands conveyed by Wilson to Metzger under dates of October 20 and December 31, 1888, stating that said deeds were never delivered to him but were placed on record without his knowledge or consent; that he never assumed or agreed to assume the payment of any liens on said lands; that he never authorized the execution of any such deeds, and never accepted the same nor authorized the making of such deeds.

This suit was begun May 16, 1890, by Huntington against Metzger and Wilson, in the Cass Circuit Court, and on June 13, 1890, a verdict was found in favor of Metzger. On the granting of a new trial the venue was changed to Miami county, where a verdict was rendered against Metzger for twenty-six thousand dollars. The jury also returned answers to certain interrogatories. The only parties to this appeal are Metzger and Huntington.

The action was personal against Metzger upon the assumption clause in the deed from Wilson. The complaint was in six paragraphs. The first and fifth paragraphs were based upon the theory that Metzger and Wilson were partners. This theory, however, seems to have been abandoned. The fourth and sixth paragraphs count upon the deed of December 31 as well as upon that of October 20, but the deed of December 31st was not finally considered, and the verdict rested upon the deed of October 20, 1888. The second and third paragraphs, upon which the case was therefore tried, are based upon the assumption clause in the deed of October

20, 1888. Copies of all deeds, mortgages and notes are made exhibits to the complaint.

A verified answer was filed in seven paragraphs, the first being a general denial; the second, a plea of want of consideration; the third, payment; the fourth and fifth, confession and avoidance; and the sixth and seventh, *non est factum*.

A reply followed in general denial to the second, third, fourth and fifth paragraphs of the answer; also special pleas to the fourth and fifth paragraphs. To the special pleas, being the second and third paragraphs of the reply, demurrers were overruled.

The points discussed in the briefs of counsel are:

1. The sufficiency of the evidence to sustain the judgment.

2. The sufficiency of the special paragraphs of the reply, to which demurrers were overruled.

3. The correctness of the court's ruling in the giving and refusing of instructions.

The real question underlying all these discussions is whether Wilson, in the making of the deeds in question and particularly in the placing of the assumption clause in his own deed to Metzger, was acting as Metzger's agent; and, if he was not such agent, whether Metzger ever ratified the placing of such clause in said deed.

In the fifth paragraph of his answer, which is substantially the same as the fourth, the appellant Metzger specifically and in detail denied such agency or ratification; and averred that his only contract in relation to said lands was made with Frank E. Little, in which, through Wilson, as Little's agent, he purchased Little's interest subject to the mortgages, but without any assumption of payment; that he never saw the deeds, and had no notice or knowledge of the clauses of assumption therein until some time in February or March, 1890,

when appellee's attorneys made it known to him and demanded payment of the principal and interest of said mortgages; that after so learning of said assumption clause in said deed to him, he at once repudiated the deed, and conveyed the real estate back to Wilson; that he had no knowledge that Little had assigned to Wilson his contract; that he paid said purchase-money due said Little from him to said Wilson as the agent of Little, and in so doing believed, in good faith, that Wilson was the agent of Little, and that a payment to Wilson, the agent, was a payment to Little as principal.

To this answer the appellee filed his third paragraph of reply, which is substantially the same as the second paragraph.

It is to be learned from the reply that the appellee, William W. Huntington, contracted with Little and Wilson to sell the land subject to mortgages, aggregating $45,000; that Little and Wilson "assumed these mortgages as part of the purchase-price," and that a deed should be given them as soon as the ground was platted, so that mortgage liens could be placed separately, "creating specific liens upon said lots"; that after Little and Wilson entered into possession "the said Little sold his interest, about June 1, 1888, to the defendant, William G. Metzger," the terms of the sale being unknown to the appellee; that the appellee "was advised by said Little and Wilson that the said Metzger had succeeded to the rights of said Little under said contract for the sale of said lands, and on the representation that the said Metzger was financially responsible, the plaintiff (appellee) accepted said Metzger in lieu of said Little"; that Metzger contributed his share towards the improvement of the lots; that Metzger came to Minneapolis and saw the land, and that he was advised by Wilson from time to time of everything that was being done and the expense

thereof; that Metzger and Wilson purchased said lands with the intention of placing the same upon the market, each to bear one-half the expense and to share one-half the profits; that Metzger resided in Indiana and Wilson in Minneapolis, and Wilson was in possession of the lands for himself and Metzger, and was making the improvements with the knowledge and consent of Metzger, who urged the completion of the work and the procuring of the deeds; that by October 20, 1888, eight thousand dollars had been spent upon the improvements, and Wilson informed appellee that they were ready to close the contract but requested that the whole forty-five thousand dollars be made payable in five years instead of five thousand in one year; that Wilson "further informed the plaintiff (appellee) that as the defendant, Metzger, was with him in the contract, and was a man of large means, and would assume the payment of the notes and mortgages, this would make them perfectly secure;" that Wilson also informed him that one Johnson had been selected as the man to whom the deed should be made by appellee; that deeds were prepared for execution, one from Johnson to Wilson, containing an assumption of the notes and mortgages, and one from Wilson to Metzger for an undivided one-half, also containing an assumption of said notes and mortgages; that the appellee "examined said deeds and saw that each contained the assumpsit clause," and was satisfied therewith and so informed Wilson, and that said clause was discussed by Wilson and appellee, and the legal effect thereof considered; that "the plaintiff (appellee) at the time was fully advised as to all the facts herein set out, and knew that Metzger and Wilson had been in possession of said property since June, 1888;" that on the 20th day of October, 1888, said deeds were executed concurrently, and at the same time said plat, notes, and mortgages; that "all of

said papers were left, in the presence of plaintiff, at the office of the register of deeds;'' that ''it was in reliance upon said assumpsits by said Metzger and Wilson, contained in said deeds, that the plaintiff and the other heirs of the said Jonas Huntington, deceased, acting through him, parted with their title to said lands;'' that immediately after the execution of said deeds Metzger claimed title to said lands, and joined with Wilson in the execution of deeds for certain of the lots; that ''the plaintiff, still believing that the said Wilson was acting for himself and said Metzger in the closing of said contract of the 20th of October, 1888, allowed the subsequent sale of said lots to take place;'' that Metzger was advised by Wilson, in October, 1888, that the deeds had been executed and recorded, ''and while said Metzger lived in Indiana, he left the entire charge of said property to said Wilson, and knew that said land had been conveyed to him by deed duly recorded, and while he knew that he did not make the bargain himself, he knew that it had been made by some one in his behalf; and the plaintiff avers that said Metzer was not present in Minneapolis in person, or by any other agent except Wilson on the 20th day of October, 1888, when said deeds were executed and recorded, and that with full knowledge of all said facts said Metzger claimed title to said land and sold and conveyed lots.''

The acts of Huntington, Little, and Wilson in relation to the property are very fully alleged in the reply, but the suit is upon Metzger's assumption of indebtedness to Huntington, and there is a total absence of allegation as to Metzger's having directly made or ratified such assumption. Neither is it directly alleged that Wilson, or any one else, was Metzger's agent in the making of such assumption. If such agency existed, or if such ratifica-

tion ever took place, we can learn that fact from the reply only by way of inference from other facts alleged.

The reply shows that Little and Wilson assumed the debt to Huntington in their contract with him; but no assignment or transfer of this contract to Metzger is shown. In his answer Metzger set up a contract with Little, according to the terms of which he purchased from Little "an undivided one-half interest in that tract of land * * * which is to be known as 'Arlington Hights,' Lake Minnetonka," on certain conditions, among them, "said conveyance to be made subject to specific mortgages on lots when said tract is platted, aggregating the sum of forty-four thousand seven hundred dollars;" but no assumption of the debt being stated.

Of this sale by Little to Metzger the reply states: "The said Little sold his interest about June 1, 1888, to the defendant, William G. Metzger"; adding, after stating that Little's contract to Metzger has been destroyed: "That the plaintiff was advised by said Little and Wilson that the said Metzger had succeeded to the rights of said Little under said contract for the sale of said lands, and on the representation that the said Metzger was financially responsible, the plaintiff accepted said Metzger in lieu of said Little."

It will be observed that the reply simply states that "Little sold his interest" to Metzger. There is no suggestion in this that Metzger took an assignment of Little's contract with Huntington, and none that Metzger had assumed any obligation to Huntington. That Little and Wilson should have informed Huntington that Metzger had succeeded to the rights of Little under the contract amounts to nothing. Metzger could not be bound by what Little and Wilson said to Huntington.

Indeed, the reply at this point shows laches on the

part of Huntington.   He says that Little sold to Metzger about June 1, 1888, and that Little and Wilson then told him that Metzger succeeded to Little under the contract. While this information could not bind Metzger, it did put Huntington on inquiry.   The deed containing the assumption clause sued on was not made until October 20, 1888.   During this period of more than four months and a half, Huntington should have learned from Metzger himself whether the information given by Little and Wilson was correct.   He should not—on October 20 thereafter, in the absence of Metzger, and without having learned from him in writing, or orally when Metzger visited Minneapolis, whether he had taken upon himself the personal obligation to pay so large a debt— have joined with Little, Wilson and the stranger Johnson in loading upon Metzger an assumption of twenty-five thousand dollars' indebtedness.   What Huntington was informed, what he believed, what he relied upon, does not count.   He should have learned as a fact whether Metzger had assumed the payment of this debt.   Not only was the information given by Little and Wilson over four months and a half before the deeds were made, sufficient to put Huntington upon inquiry, but so also was the large amount involved.   Whether Metzger bought this land simply subject to mortgages aggregating forty-five thousand dollars, or whether he also assumed personal responsibility for the payment of the mortgages, should not be left a doubtful question.   That doubt can not be resolved against Metzger in the absence of some facts to show assumption by himself or agent, or at least to show ratification if done without authority.

The facts relied upon to show that Wilson, in inserting the assumption clause in the deed, was acting as Metzger's agent are, that Wilson was in possession of the lands with the knowledge and consent of Metzger,

and was engaged in platting and improving the land, of which Metzger was advised from time to time, and that he contributed his share of the expenses; that Metzger was in Minneapolis before the deeds were made and saw the land; that Metzger and Wilson bought the land with the sole purpose of platting and selling the same, each bearing one-half the expenses, and to share one-half the profits; that Wilson advertised lots for sale, and sold several lots; and that Metzger urged Wilson to complete the plat and improvements as soon as possible, and procure the deeds to the land.

It is not claimed that Metzger and Wilson were partners. Certainly then all the acts stated were acts that Wilson might do as tenant in common, owner of the undivided one-half of the land, and in possession. It is true that a tenant in common may act as agent for the other owners; but his being a tenant in common and in possession does not of itself make him agent to incumber his cotenants' interests, still less to impose a personal obligation upon them. There is no such implied agency. Mechem Agency, section 71; *Thompson* v. *Bowman*, 73 U. S. (6 Wall.) 316.

But there is another reason why Wilson could not be Metzger's agent in the assumption of the debt. His interests in the transaction were opposed to those of Metzger. It is averred in the reply, that Wilson "informed the plaintiff that as the defendant, Metzger, was with him in the contract, and was a man of large means, and would assume the payment of the notes and mortgages, this would make them perfectly secure." Then the deeds are described as, "one from Johnson to him, Wilson, for the lots in said plat, containing an assumption of the notes and mortgages; one from said Wilson to the defendant, Metzger, for an undivided half of said

lots, also containing an assumption of said notes and mortgages  *   *   *;   that this plaintiff examined said deeds, and saw that each contained the assumpsit clause assuming to pay the purchase price as provided by the contract, and was satisfied therewith, and so informed said Wilson, and that the assumpsit clause was discussed by Wilson and himself, and the legal effect thereof considered." That is, Huntington and Wilson, considering and understanding the legal effect of the assumption clause, in the absence of, and without the knowledge of, Metzger, so framed the deeds that the obligation, which rested wholly upon Wilson by virtue of his contract with Huntington, and the deed from Johnson, should be shifted one-half from Wilson's shoulders to those of Metzger. Not only Huntington, but Wilson also, was directly interested in placing this obligation upon Metzger. Wilson therefore could not, in his own interests, make a deed to Metzger, placing a heavy obligation upon Metzger in so doing, and then, as agent for Metzger, accept that deed, with its obligation, putting the whole on record without Metzger ever seeing the deed or knowing its contents.

As said in Mechem on Agency, section 713, "The principal may, if he sees fit, intrust his interests in the hands of an agent whom he knows to also have an interest in the same transaction which is or may be adverse to his own. But this is not to be presumed, and it must appear that the interest of the agent was fully and fairly disclosed to the principal." See, also, *Michoud* v. *Girod*, 45 U. S. (4 How.) 502, and *Wardell* v. *Railroad Co.*, 103 U. S. 651.

Indeed, the duty of Wilson to Metzger, if he were his agent, was in this transaction so opposed to Wilson's interest to himself, that Huntington was again put upon inquiry to know that Metzger had really agreed to this

assumption of debt. It appears from the reply, that Huntington and Wilson discussed the nature and effect of the assumption clause, and Huntington was assured that Metzger would agree to it. So momentous a matter should not have been left dependent on a statement by a third party whose own interests in it were so great as those of Wilson.

"Every person" (says Mechem Agency, section 706), "dealing with an assumed agent is bound, at his peril, to ascertain the nature and extent of the agent's authority. The very fact that the agent assumes to exercise a delegated power, is sufficient to put the person dealing with him upon his guard, to satisfy himself that the agent really possesses the pretended power. If, having relied upon it, he seeks to hold the alleged principal responsible, he must be prepared to prove, if either be denied, not only that the agency existed, but that the agent had the authority which he exercised."

And, in section 276, of the same authority, it is said: "Persons dealing with an assumed agent therefore, whether the assumed agency be a general or special one, are bound at their peril, to ascertain not only the fact of the agency but the extent of the authority, and in case either is controverted, the burden of proof is upon them to establish it." See, also, *Davis* v. *Talbot*, 137 Ind. 235, and authorities there cited.

Even, therefore, if Wilson were a general or special agent of Metzger, in the care and management of their property, which we think does not appear from the facts pleaded, still that would not be enough, especially in view of the adverse interest of Wilson, to warrant Huntington to take it for granted that Wilson was vested with the extraordinary power to assume in Metzger's name, and so as to bind him, the personal obligation to pay a debt of twenty-five thousand dollars.

The allegations relied upon to show that Metzger ratified the deed. as made with the assumption clause, are that Metzger claimed ownership of the property, executed deeds for lots, sent money to pay his part of expenses, taxes, and interest.    None of these acts, however, are incompatible with the title of Metzger as tenant in common by a deed conveying the lands subject to the mortgages.

It is not alleged in the reply that he did any of these things after learning of the existence of the assumption clause in the deed; but it is said that before he reconveyed the land to Wilson he knew that the appellee was relying upon the assumpsit.    The reliance which appellee may have had upon the assumpsit could have no force to make effective an assumption which Metzger never made or ratified, and which he repudiated as soon as he learned of its existence by reconveying the property, and also abandoning upwards of seventeen thousand dollars which he had invested in it.    Ratification, like agency itself, must be clearly and affirmatively established by him who relies upon agency or ratification for the enforcement of his claim.    *Robinson* v. *Anderson*, 106 Ind. 152; *Runyon* v. *Snell*, 116 Ind. 164.

But appellee, tacitly admitting that agency is not well pleaded, contends that the verdict finding the fact of agency cures the weakness of the reply in this respect; and authorities are quoted to sustain this contention. It is true that a pleading in which all the essential facts are pleaded, but pleaded imperfectly, will be cured by a verdict finding the facts.    But such is not this case. There is no allegation that Wilson was Metzger's agent for any purpose, still less that he had authority to insert the assumption clause in the deed; and no facts are pleaded, as we have seen, from which such agency or authority could be inferred.

We might say, besides, that voluminous as is the record, we think it contains no evidence sufficient to sustain the verdict of the jury finding the fact of agency. That, however, is not a question upon which we think it necessary that we should enter, as is true, also, of other questions ably discussed by counsel. We are satisfied that the replies are insufficient, and that they are not cured by the verdict; and this conclusion must result in a reversal of the judgment.

The judgment is reversed, with instructions to sustain the demurrers to the second and third paragraphs of the reply, and for further proceedings.

Filed June 22, 1894.

## ON PETITION FOR A REHEARING.

HOWARD, J.—In their petition and briefs for a rehearing, counsel for appellee have displayed much earnestness in argument, even pushing their zeal to the utmost verge of a proper discussion of the case. It would seem that the briefs might well have been devoted exclusively to the discussion of questions presented in the record.

Because the court has been unable to reach the conclusion reached by counsel, it is intimated that we have not considered appellee's side of the case. The sum of this contention is that because the court does not see the record as counsel see it, therefore the court does not see it as it is. We are, however, of opinion that our own vision should guide us, and inasmuch as we are unable to use appellee's glasses, we must be content to make use of our own in looking through the record.

To counsel, the record seems to show that appellee is entitled to recover from appellant a large sum of money. To the court, it is apparent from the same record that an outrage was attempted upon appellant; that, whether by

fraudulent design or by an unfortunate chapter of acci-
dents, an unconscionable obligation was sought to be
thrust upon him without his knowledge or consent.

In appellee's additional brief, *Barrett* v. *Lewis,* 106
Ind. 120, and *Otis* v. *Gregory,* 111 Ind. 504, are cited to
show that the substance, rather than the forms, of a
transaction are to be regarded in adjudicating the rights
of parties. This is a sound and equitable rule, and pe-
culiarly applicable to the case before us.

Regarding, therefore, the substance of the pleadings
in this action, which were considered in the original
opinion, and upon which the case was tried and the de-
cision rendered, we find that the complaint presents a
*prima facie* case in favor of the appellee. A deed is
shown from Wilson to Metzger, duly recorded, and con-
taining a clause in which the payment of a mortgage
debt due appellee is assumed. Acts from which an ac-
ceptance by Metzger of said deed may be inferred are also
alleged.

The answers admit this deed and its record, and that
it contains the assumption clause, but deny that the
clause was inserted with Metzger's consent or knowledge,
or that its insertion was ever ratified by him. This cer-
tainly was in substance a plea in confession and avoid-
ance.

The replies set up the facts in detail, showing all the
transactions from the first contract of appellee with Wil-
son and Little until the bringing of the suit against
Metzger upon the assumption clause. The facts so de-
tailed do not show that Metzger ever authorized or knew
of the insertion of the assumption clause, or that he ever
ratified it. The demurrers to the replies should, therefore,
have been sustained. Otherwise a personal debt may
be imposed upon an individual without his knowledge

or consent, a proposition abhorrent to the plainest principles of justice.

But, while counsel do not any longer seriously argue that the replies are good in themselves, yet it is said that the jury found that in the making of the deed from Wilson to Metzger, and in the accepting of that deed, with its assumption clause, Wilson was Metzger's agent; that, therefore, the replies, as thus cured by the verdict, show that Metzger, through Wilson, his agent, did have knowledge of the assumption clause, and did accept the deed containing it.

Agency is a conclusion of fact, to be established by direct proof or by the attendant circumstances. *Columbus, etc., R. W. Co.* v. *Powell, Admr.,* 40 Ind. 37; *Isbell* v. *Brinkman,* 70 Ind. 118; *Indiana, etc., R. W. Co.* v. *Anderson,* 114 Ind. 282.

It is not claimed that there is in this case any direct proof that Metzger ever appointed Wilson his agent. The appointment, if made, can be made known to us only by inferences from facts shown. If, therefore, the particular facts and circumstances found are not consistent with the fact of agency, then the mere conclusion of the jury, that one was the agent of another, falls unsupported to the ground.

Undoubtedly, the jury were of opinion, and correctly so, as said in Story on Agency, section 2, that, in general, "whatever a man *sui juris* may do of himself, he may do by another; and, as a correlative of the maxim that what is done by another is to be deemed done by the party himself."

So here, if the jury concluded from the circumstances detailed in the record that Wilson was Metzger's agent, then they might further conclude that what Wilson did in the premises, was done by Metzger.

Hence the question, first of all, to decide is, whether,

in fact, Wilson was Metzger's agent for the purpose of making the assumption clause in the deed. If he was such agent, then the conclusion of the jury was correct; if he was not, then the whole fabric, built up on the theory of such agency, tumbles to the ground.

The definition of an agent at the common law, as quoted in Story on Agency, section 3, is: "An attorney is he who is appointed to do anything in the place of another."

The appointment need not be in writing. It may be inferred from the words or acts of the principal. These words or acts must, however, be such as point clearly to the agent as such.

In Evans on Agency (Ewell's ed.), the definition given is: "An agent is a person duly authorized to act on behalf of another, or one whose unauthorized act has been duly ratified." This definition is adopted in 1 Am. and Eng. Encyc. of Law, 333.

It will be noticed that the agent must be duly appointed, or his act must be duly ratified. It is not enough that the jury find that Wilson was Metzger's agent. The other facts found must be such as to allow the inference that he was duly appointed, or, at least, that his acts were duly ratified. The jury can not be allowed to give us their unsupported, and even, as here, contradicted, conclusion, simply, that he was agent.

So, also, it is not enough to show that Metzger ratified and acted under the deed. It is necessary to show that, at the time of such ratification, he knew of the existence of the assumption clause in the deed, and that he ratified such assumption clause; unless, indeed, it should appear that the ratification of the deed was made with the intent to take all liability without such knowledge. Otherwise, all material circumstances must be made known to the principal. The act of the agent can not

be ratified without knowledge of what the act was. And in this case, the ratification and acceptance of the deed could be only a ratification of what the principal knew was in the deed. 1 Am. and Eng. Encyc. of Law, 432, and cases cited.

In *Manning* v. *Gasharie,* 27 Ind. 399, where an agent was authorized to buy goods for cash only, it appeared that he had bought certain goods on credit. It was held that the acceptance and use of the goods by the principal would not be a ratification of the act of the agent, unless the fact of the purchase having been made on credit was known to the principal. See, also, *Davis* v. *Talbot, supra,* cited in the original opinion.

In the case at bar, in answer to interrogatories, the jury found that in the contract of sale to Metzger of Little's interest in the land, Wilson was Metzger's agent. But, in two other answers to interrogatories, just preceding, the jury also found, with reference to the same transaction, that Wilson was Little's agent. This contradiction shows that the jury had but a vague and confused idea of the meaning of the term agent. In numerous other answers, the jury, in finding the particular facts and circumstances of all the transactions, show clearly that Wilson could not be Metzger's agent.

Even if Wilson had authority to execute and deliver to Metzger a deed for the land, and also to accept that deed, all as Metzger's agent, an absurdity on the face of the statement, yet even such authority would not give to Wilson the right to insert in the deed a personal obligation on the part of Metzger to pay a lien upon the land. Only by a ratification of the transaction, with full knowledge of all the circumstances, including the contents of the deed, could the principal be bound by such unauthorized act of the agent.

We think it clearly appears from the record in this

Metzger v. Huntington, Trustee.

case, that Wilson was not Metzger's agent for any purpose, whether general or special. But even on appellee's theory, that by inference from the facts of the case it may be concluded that he was an agent for some purposes, yet it would not even then follow that he had a right, without Metzger's knowledge and consent, to insert a clause in a deed never seen by Metzger, by which Metzger became bound to pay to appellee the sum of $25,000. Wilson might as well have signed Metzger's name to a promissory note for that amount, and turned it over to appellee. It is only when the agent acts within the scope of his authority that he can bind his principal; and those who deal with one who thus assumes to act for another, do so at their peril. *Osborn* v. *Storms*, 65 Ind. 321; *Love* v. *Payn*, 73 Ind. 80; *Union Mut. Life Ins. Co.* v. *Buchanan*, 100 Ind. 63; *Robinson* v. *Anderson*, 106 Ind. 152.

In arguing that the evidence supports the finding of agency, acceptance, and ratification, counsel say that the jury "heard the cross-examination [of Metzger], and concluded, as it was their sole province to conclude, that he was not telling the truth." It is true that the jury have a right to reject evidence if they do not believe it to be true; but the question here is, not what evidence the jury may have disbelieved, but whether there was evidence to support the findings made by them. It will not do to explain away the evidence against the correctness of the findings; it is necessary to show some evidence in their favor.

The only evidence referred to by counsel which is claimed to directly support the findings as to Metzger's having knowledge that the payment of the mortgage debt was assumed in the deed to him from Wilson, is a fragmentary copy of a letter from Wilson to Metzger, said to have been written a few days after the date of the

deed.  That letter was so imperfect and illegible that it could not be read so as to make it intelligible; and it is seriously debated by counsel on both sides whether or not the fragments of such letter are in the record.  And indeed, it is doubtful whether the fragment is in the record, or whether it is a part of the record for any purpose.  Certainly it could make no sense if read to the jury, and at most could be given meaning only by the aid of parol evidence.  Wilson and Metzger were both questioned as to its contents, and both testified that it contained no statement relating to Metzger's assuming any personal obligation to pay the mortgage debt.  Surely then all this, the fragmentary writing, and the parol evidence in relation to it, constituted no evidence to the jury that Metzger had assumed the obligation.

Other items of evidence are cited in appellee's several briefs, from which it is argued that the jury might make inferences as to Metzger's knowledge of the assumption clause in the deed.  None of this evidence, however, was of such a nature as to be inconsistent with Metzger's acceptance of the deed subject to the mortgage debt; and it is only by the utmost straining that such inference could be made.  Agency, acceptance, ratification, these should be shown by the evidence, not guessed at by the jury.  None of the evidence showed knowledge by Metzger of the assumption clause in the deed.

The petition for a rehearing is overruled.

Filed Dec. 14, 1894.