### NICHOLS *v.* STATE OF INDIANA.

[No. 3,732.   Filed April 25, 1902.]

CRIMINAL LAW.—*Pleading.*—All that is required in a criminal charge
is that it should be prepared with that degree of certainty that
the court and jury may know what they are to try and to acquit
the defendant of, or punish him for, and that the defendant may
know what to answer to; and that the record may show, so far
as may be, for what he was once put in jeopardy.   *p. 679.*

LOTTERIES.—*Agent for Lottery.*—*Affidavit.*—An affidavit charging that
defendant did "unlawfully act as an agent for a certain lottery
scheme or gift enterprise" charges with sufficient certainty the of-
fense of acting as lottery agent, under §2171 Burns 1901.   *pp. 675–677.*

CRIMINAL LAW.—*Motion in Arrest.*—A motion in arrest of judgment
must be in writing, and must state the causes therefor.   *pp. 679, 680.*

SAME.—*Appeal.*—*Bill of Exceptions.*—In a criminal cause a bill of ex-
ceptions must be filed within sixty days from the time of render-
ing judgment, and the trial court has no power to extend the time.
*p. 681.*

From Marion Criminal Court; *Fremont Alford,* Judge.

Will Nichols was convicted of being an agent for a lot-
tery scheme, and he appeals.   *Affirmed.*

*E. Marshall, H. Seyfried, J. J. Rochford* and *J. M. Wall,*
for appellant.

*W. L. Taylor,* Attorney-General, *Merrill Moores, C. C.
Hadley* and *J. C. Ruckelshaus,* for State.

WILEY, J.—Appellant was prosecuted upon an affidavit
charging him with being an agent for a lottery scheme or
gift enterprise.   The prosecution originated in the police
court of the city of Indianapolis, where he was found guilty.
From the judgment pronouncing him guilty and assessing
his punishment, he appealed to the Marion Criminal Court,
where he was again tried and found guilty, and fined $200.
He predicates error upon the overruling of his motion to
quash the affidavit, overruling his motion for a new trial,
and overruling his motion in arrest of judgment.

The statute upon which the prosecution rests is §2171
Burns 1901, §2077 Horner 1901, and is as follows:

"Whoever sells a lottery ticket or tickets or shares in any lottery scheme or gift enterprise; or acts as agent for any lottery scheme or gift enterprise; or aids or abets any person or persons to engage in the same; or transmits money by mail or express, or otherwise transmits the same, to any lottery scheme or gift enterprise for the division of property, to be determined by chance; or makes or draws any lottery scheme or gift enterprise for a division of property not authorized by law, on conviction thereof, shall be fined in any sum not more than $500 nor less than $10."

It will be seen that this statute, considered disjunctively, defines five distinct and separate offenses. This prosecution is for a violation of the second offense named, viz., acting as "agent for any lottery scheme or gift enterprise." The affidavit charging the offense, omitting the formal parts, is as follows: "Be it remembered that on this day, before the judge of the police court of the city of Indianapolis, personally came Samuel Gerber, who being duly sworn, upon his oath, says that Will Nichols, late of said city and county, on or about the 13th day of December, in the year 1900, at and in the city and county aforesaid, did then and there unlawfully act as an agent for a certain lottery scheme or gift enterprise, known as the Interstate and Springfield Investment Company, for the division of personal property, to wit: Certain sums of lawful money of the United States to be determined by chance or lot, which said sums of money and a particular description thereof are to this affiant unknown, and, therefore, cannot be given, and the plan and scheme for the division and distribution of such sums of money by said lottery scheme or gift enterprise are to this affiant unknown, and cannot be given, and the mode of operating and conducting such lottery scheme and gift enterprise is to this affiant unknown and for that reason cannot be given, contrary to the form of the statute" etc.

It is urged against the affidavit that the facts stated do not constitute a public offense, and that it does not state the

offense with sufficient certainty. In determining the sufficiency of the affidavit, it is well to consider the scope of the statute and the intention of the legislature in passing it. It is clear that it was the purpose of the legislature to enact a statute that would suppress, as far as possible, the vice of lotteries; and so it made it an offense, among other things, for any person to act as agent for any lottery scheme or gift enterprise. The statute enumerates many things that are required, or may be required, to maintain and operate a lottery or gift enterprise, and makes certain acts connected therewith public offenses. The affidavit charging appellant with acting as agent for a designated lottery scheme or gift enterprise is in the exact language of the statute, and the rule is that, ordinarily, where an offense is charged in the language of the statute defining it, it is sufficient. *Stewart* v. *State,* 111 Ind. 554; *Benham* v. *State,* 116 Ind. 112; *Graeter* v. *State,* 105 Ind. 271; *State* v. *Miller,* 98 Ind. 70; Gillett on Criminal Law, §1322.

It is urged that charging that appellant acted as agent of a certain lottery scheme or gift enterprise is the mere statement of a conclusion, and that the affidavit is bad for a failure to state any act of commission or business transacted, which would establish an agency, or show an authority as agent. It must be conceded that, if it was necessary to charge what he did as such agent, then the affidavit is fatally defective, for it is wanting in that respect. The word "agent" has a legal and well defined meaning, and it means a person employed by another to act for him. Evans on Agency (Ewell's ed.) says: "An agent is a person duly authorized to act on behalf of another." This definition is adopted in 1 Am. & Eng. Ency. of Law, (1st ed.) 333, and by the Supreme Court in *Metzger* v. *Huntington,* 139 Ind. 501.

The affidavit simply charges that appellant did unlawfully act as the agent of a certain lottery scheme or gift enterprise. This must be construed as equivalent to saying that

he represented such lottery scheme, etc., of his principal. If he was its agent, the law will presume that he had authority to act for and represent his principal in all matters within the scope of his agency. The law makes it an offense to act as agent of such a vice. To charge that a person is an agent of another is not stating a conclusion, but an issuable fact. We think this question is definitely settled by the case of *Ritter* v. *State,* 111 Ind. 324. That case was a prosecution for embezzlement, under §2022 Burns 1901, §1944 Horner 1901, defining embezzlement. So much of the statute as is necessary to present the question decided is as follows: "Every officer, agent, attorney, clerk, servant or employe of any person or persons, or corporation or association, who, having access to, control or possession of any money   *   *   *   to the possession of which his or her employer or employers, is or are entitled, shall, while in such employment, take, purloin, secrete, or in any way whatever appropriate to his own use, or to the use of others, *   *   *   any money, *   *   *   or other property or article of value, belonging to or desposited with, or held by such person or persons, or corporation or association, in whose employment said officer, agent, attorney, clerk, servant, or employe may be, shall be deemed guilty of embezzlement," etc.

The indictment charged that appellant was the "employe" of a designated person; that as such he had control and possession of divers moneys, bills, notes, etc., of a fixed value, being the property of his employer, and to which he was entitled to possession; and that he unlawfully purloined and appropriated the same to his own use.

As to the sufficiency of the indictment on motion to quash appellant made the same objections as are made here, i. e., that the indictment charged that appellant was "an employe of one John McCarter," and did not state the facts which would enable the court to ascertain and determine whether or not he was such an "employe" within the meaning of that word as used in the statute. The court, by

Howk, J., said: "We do not think this objection to the indictment is well taken or can be sustained. The word 'employe,' although of French derivation, was long since transplanted and adopted as an English, or at least, as an American word. In this country it is of such common use that its meaning is not at all uncertain. Besides, the word 'employe' is one of those used in the statute, in specifying the persons who may commit the public offense of embezzlement; and, as a general rule, under our decisions, in framing an indictment or information, it is safe to adopt the terms and language of the statute. * * * Webster thus defines the word, 'employe': 'One who is employed.' If in the case in hand, appellant was not employed by John McCarter, in any capacity or for any purpose, he was not guilty of the crime of embezzlement as defined in our statute; but if he was so employed, no matter in what capacity or for what purpose, and by virtue of his employment was entrusted with money of his employer, which he fraudulently and feloniously appropriated to his own use, he was no doubt guilty, under our statute, of the public offense of embezzlement."

The word "agent" is certainly one that is in as common use as the word "employe", and there is no uncertainty in its meaning. In this case it can be said, as in the Ritter case, *supra,* that if appellant was not the agent of the lottery scheme or gift enterprise known as the Interstate and Springfield Investment Company, for the division of personal property by chance, he was not guilty of the offense charged; but if he was such agent, no matter in what capacity, or for what purpose, he was guilty, under the plain letter and spirit of the statute.

In the case of *Woodward* v. *State,* 103 Ind. 127, appellant was charged as being the "agent and employe" of one Miller, for the purpose of collecting money on a certain lottery ticket, and, as such "agent and employe", he received and took into his possession divers moneys, etc., be-

longing to said Miller, and converted and appropriated the same to his own use. The indictment was held sufficient.

A wholesome and well grounded rule of construction in criminal law is that no greater certainty is required in criminal than in civil proceedings. Certainty to a common intent is all that is required in criminal pleadings, and an indictment need not be more certain than a civil pleading. *McCool* v. *State,* 23 Ind. 127; *Lay* v. *State,* 12 Ind. App. 362; *State* v. *Sarlls,* 135 Ind. 195.

In a civil pleading, if the pleader should designate one person as the agent of another, there would be a certainty to a common intent as to what was meant. Under §1824 Burns 1901, §1755 Horner 1901, an indictment will be held sufficient if it states, among other things, that an offense has been committed within the jurisdiction of the court, or is triable therein, and the offense charged is clearly set forth in plain and concise language, and that the offense charged is stated with such a degree of certainty that the court may pronounce judgment, upon conviction, according to the right of the case. The same rules must be applied to an affidavit charging a public offense.

It seems to us that all these requirements are embodied in the affidavit in this case. All that is required in a criminal charge is that it should be prepared with that degree of certainty that the court and jury may know what they are to try and to acquit the defendant of, or punish him for; that the defendant may know what he is to answer to; and that the record may show, so far as may be, for what he was once put in jeopardy. *Whitney* v. *State,* 10 Ind. 404; *McLaughlin* v. *State,* 45 Ind. 338; Gillett Crim. Law. (2nd ed.) 125. Under these authorities and statutory provisions, we must hold that the court correctly overruled the motion to quash.

Under the specification in the assignment of error questioning the overruling of appellant's motion in arrest of judgment, the record does not present any question for de-

cision. The statute declares that a motion in arrest of judgment in a criminal case is an application in writing, and may be granted for two reasons: (1) That the grand jury that found the indictment had no legal authority to inquire into the offense charged; and (2) that the facts stated in the indictment or information do not constitute a public offense. §1912 Burns 1901, §1843 Horner 1901.

Immediately after the court announced its finding of guilty the record shows the following: "And the defendant now moves the court in arrest of judgment." The motion, as disclosed by the record, was an oral motion, and not in compliance with the statute. The motion in arrest must not only be in writing, but it must state the causes therefor. In the motion in this case no cause is stated. It has been ruled that such motion must be in writing. *Chandler* v. *State,* 141 Ind. 106; *Harris* v. *State,* 155 Ind. 15.

A consideration of the motion for a new trial depends upon the evidence, and, if the evidence is not in the record, the questions presented thereunder can not be decided. The Attorney-General contends that the evidence is not in the record, and such contention seems well grounded. The judgment was rendered the 28th of December, 1900. The appellant did not at that time reserve any exceptions, nor ask time in which to file a bill of exceptions. On January 3rd following, he filed a motion for a new trial, which was on said day overruled, to which he excepted, and asked and was given sixty days in which to prepare and file his bill of exceptions. March 2, 1901, the record shows that the appellant tendered to the trial judge his bill of exceptions, which was examined, approved, and signed; and the clerk certifies that on said day such bill was filed in his office.

Section 1916 Burns 1901, §1847 Horner 1901, provides that: "All bills of exceptions, in a criminal prosecution, must be made out and presented to the judge at the time of the trial, or within such time thereafter as the judge may allow, not exceeding sixty days from the time judgment is

rendered; and they must be signed by the judge and filed by the clerk. The exceptions must be taken at the time of the trial."

In the case of *Hotsenpiller* v. *State,* 144 Ind. 9, it was held that, if leave to file a bill of exceptions in a criminal case is not given until after the judgment is rendered, the bill, if filed within the time allowed, will not be a part of the record, and that leave to file the bill can only be granted "at the time of the trial," under §1916, *supra;* the term "trial" meaning all steps taken in the cause from its submission to the court or jury to the rendition of the judgment. In *Hunter* v. *State,* 101 Ind. 406, it was ruled that "the trial is terminated by the final judgment, and that the leave to file a bill must be obtained before the judgment, or at least concurrently with its entry." In *Bartley* v. *State,* 111 Ind. 358, in construing the section of the statute under consideration, the court said: "The power of the court, therefore, to extend the time within which a bill of exceptions may be filed,  *  *  *  is, in a criminal cause, limited to sixty days after the judgment is rendered." See, also, *Guenther* v. *State,* 141 Ind. 593.

Under the plain provisions of the statute, and the authorities cited, the evidence is not in the record; and we cannot therefore consider the motion for a new trial.

Judgment affirmed.