Filed November 6, 1895.

No. 17,488.

## COLE v. TEMPLE.

ESTOPPEL.—*Married Woman.*—*Surety.*—*Mortgage.*—*Note.*—A wife is not estopped to deny that she executed notes and a mortgage as surety merely for her husband, by a recital in the mortgage that the mortgagors convey the real estate and also the stock of goods, which was the consideration of the notes, that "we" have purchased from the mortgagee, and that "we" acknowledge that we own the real estate in equal shares, where she had nothing to do with the sale except to sign the notes and the mortgage at the request of her husband after it was consummated. .

From the Crawford Circuit Court.

*R. J. Tracewell* and *A. W. Funkhouser*, for appellant.

*J. H. Weathers, J. L. Suddarth* and *C. W. Cook*, for appellee.

HOWARD, C. J.—The appellee, as assignee of one Stephen C. Patton, is the holder of the notes and mortgage in suit. These notes and the mortgage were executed to the said Patton by the appellant and her then husband, Dr. William A. Cole, since deceased. Appellant and her said husband were the owners of the real estate in controversy, being part of a lot situated in the town of English. She had inherited property from her father, and had exchanged the same for other property. The real estate here in controversy was part of the property so received in exchange by her, and the deed for the same was made to her and her said husband.

Prior to August 18, 1891, the said Patton, appellee's assignor, was the owner and in the possession of a stock of drugs kept in a store room situated on the said town lot of appellant and her husband, Patton being their tenant. On the trial, Patton testified that for ten days or two weeks prior to said date, negotiations were pending between him and appellant's husband, the said Dr. William A. Cole, for the sale of the drugs to the latter. They finally agreed on the terms of sale. Dr. Cole was to pay $1,300 for the stock, $300 cash and the balance in notes on personal surety. The persons proposed and accepted as surety, however, refused to sign the notes with the doctor.

Cole then proposed, as Patton testifies, that he and his wife, the appellant, should purchase the stock jointly, and that he and his wife should execute their notes for the unpaid balance ; and to secure said notes would give him a mortgage upon the lot and store room in question. To this Patton agreed. The $300 was paid, the invoice made, and the drug stock turned over to Dr. Cole on the 18th of August, 1891.

The appellant was not present during any of these

transactions, and took no part in the negotiations. She was then and had been for sometime on a visit at Paoli, eighteen miles distant from English. Dr. Cole, however, represented that he was acting for his wife. Patton, at the time of the sale did not think that Dr. Cole had any property and believed that the store room and lot came to the appellant, Mrs. Cole, through her father's estate. He never spoke to Mrs. Cole about her title to the lot, and did not go to Paoli to see her about the sale of the drugs. After the sale Dr. Cole went to Paoli and procured the execution of the notes and mortgage by his wife.

Over the objection of the appellant the foregoing testimony by Patton was admitted by the court, not for the purpose of showing that Dr. Cole was agent for his wife, but only as to the nature of the trade between the parties. No other evidence was offered to prove that Dr. Cole was agent for his wife.

The appellant testified: "When I signed the mortgage it was the first I knew of the purchase of the drug store. I had no interest in the purchase of the drug store, and did not have any interest in the store. All I know about was, Dr. Cole and Mr. Throop, an attorney, brought the mortgage to me at Paoli, and my husband wanted me to sign it. I signed it."

On cross-examination, she said: "I had no conversation with Patton about buying the drug store, at or before the sale. I do not remember that Dr. Cole, my husband, had talked about buying the drug store before I went to Paoli. I had nothing to do with the drug store. It was not understood that I was to help the doctor in buying it. I first heard about it on the Wednesday after the trade was made. * * * I did not examine the mortgage. My husband came into the

room where I was, and then we went into the room where Mr. Throop was and I signed the mortgage. The mortgage was not read to me. The doctor called me into the room where Mr. Throop was and told me to put my name to it. I knew it was a mortgage to secure the notes for the drug store. My husband did not tell me that he and I were to buy the drug store together."

No other evidence was given inconsistent with the foregoing, and bearing upon the question at issue, namely, the alleged obligation of appellant as joint purchaser of the stock of drugs, unless it be the recitals in the mortgage.

The mortgage, which was executed by appellant and her husband, recites that the parties convey the real estate, "and also the stock of goods that we have purchased from Stephen C. Patton, consisting of drugs, etc., * * * to secure the payment of two promissory notes, dated August 18, 1891, and made by said William A. Cole and Alice J. Cole, payable to said Stephen C. Patton, each for five hundred dollars." Other like recitals follow, including the statement: "We hereby acknowledge that we own the above described real estate in equal shares, as tenants in common, and not as joint tenants by entirety."

.It was said in *Thacker* v. *Thacker,* 125 Ind. 489: "As has often been said, suretyship is a fact collateral to the contract, and arises out of the equities existing between the parties. The test by which to determine the true relation of a married woman to a contract in which she has become a joint promisor with others, is not what relation she agreed to occupy, but what she received, or what she was to receive, in consideration of her promise. If, in fact, she neither received nor contracted for any benefit, but signed upon a consideration

the benefit of which was received by one of the joint promisors, then no matter that she may have agreed to be bound as principal, the law assigns to her the status of a surety, and she will not be bound unless she has in some way estopped herself from setting up the facts. . *Vogel* v. *Leichner*, 102 Ind. 55; *Cupp* v. *Campbell*, 103 Ind. 213." See also *Orr* v. *White*, 106 Ind. 341; *Voreis* v. *Nussbaum*, 131 Ind. 267.

If a married woman who receives no benefit from a contract, cannot, except by estoppel, bind herself as principal, it seems clear enough that she cannot, as here, bind herself as joint principal.

There is no doubt, of course, that by representing that the contract is for her own benefit, or that the money or other advantage secured thereby is to be for herself, or for her estate, a married woman may, as any other person, in case reliance is placed upon her statements, be estopped from denying the truth of such representations. Representations held to create such estoppel are set out in the case of *Tombler* v. *Reitz*, 134 Ind. 9.

Other cases are referred to in the brief of appellee.

In *Ward* v. *Berkshire Life Ins. Co.*, 108 Ind. 301, it was said that, where a married woman "represents, by sworn statement, that a contract is for her own benefit, and induces another to act in good faith on such statement, she is estopped, under the act of 1881 (section 6962, R. S. 1894; section 5117, R. S. 1881), to aver that the contract was one of suretyship."

In *Rogers* v. *Union Cent. Life Ins. Co.*, 111 Ind. 343, the court said: "The facts pleaded show that the appellee was informed by Mrs. Rogers that the money she sought to obtain was for her own benefit; that she was not undertaking as the surety of her husband; that the appellee believed her statements, and, relying on

their truth, loaned her the money she desired ; and they show, also, that the appellee rightfully relied on her representations." And, referring to *Ward* v. *Berkshire Life Ins. Co., supra,* the court added: "We did not hold in that case that the form or recitals of the contract will work an estoppel, nor do we so hold in this. What we hold is, that by her conduct and representations, relied upon by one who contracted with her in good faith, she is estopped to deny the character of her contract."

So, in *Lane* v. *Schlemmer,* 114 Ind. 296, also relied upon by appellee, the facts, as detailed in the opinion, were : "The note and mortgage were executed for personal property sold to the appellant. She made and delivered to the appellee's endorser an affidavit stating that she executed the note and mortgage to pay for the property she proposed to buy of him ; he relied on this affidavit, and her representations that she was the purchaser of the property, and that the note and mortgage were executed for her sole use and benefit, and not as the surety of her husband. The endorsee of the appellee believed the facts to be true, had no knowledge to the contrary, and relied entirely on the appellant's representations."

These cases, so far from showing that the appellant in the case at bar is estopped from denying that she signed the notes and mortgage as surety for her husband, plainly indicate, when applied to the facts in the record, that she made no representations such as the law deems sufficient to work an estoppel.

Patton's contract was solely with the husband. Personal security was at first agreed upon. That failing, the joint purchase plan, with notes and mortgage to be executed by the wife, was substituted. The wife was not consulted in either case.

After the bargain was made and possession surrendered by Patton, the husband went to Paoli and procured his wife's signature to the notes and mortgage. Patton never saw her or spoke to her about the matter. It is not pretended that Patton's testimony as to his conversation with Dr. Cole was competent to prove that he was agent for his wife in the transaction, or that the husband's representations could thus be imputed to the wife. Agency cannot be established by the statements of the alleged agent, but must be shown by some act, word or conduct of the principal. *Coburn* v. *Stephens*, 137 Ind. 683; *Metzger* v. *Huntington, Tr.*, 139 Ind. 501.

Apart from this testimony of Patton's, however, there is no evidence of any representations made by appellant as to any interest accruing to her from the contracts made by her husband. The recitals in the mortgage are plainly insufficient for such purpose. Indeed, all the facts clearly show that she had nothing to do with the sale, except to sign the notes and mortgage at the request of her husband. She made no representations whatever; and Patton, so far from relying on any representations of hers, completed the bargain, received the cash payment and placed Dr. Cole in possession of the drug store, before the appellant had any knowledge of the trade or had signed the notes or mortgage.

The judgment is reversed, with instructions to sustain the motion for a new trial.

Filed November 7, 1895.