## FT. WAYNE TRUST COMPANY *v.* SIHLER.

[No. 5,211.  Filed November 29, 1904.]

1. HUSBAND AND WIFE.—*Suretyship.*—*Estoppel.*—The plaintiff, a married woman, can not be estopped in an action for the cancelation of a note and mortgage executed by her as surety for her husband, by a showing that she made certain misrepresentations in an affidavit made at the time of the execution of such note and mortgage, reciting that the loan sought was for her own benefit, and not as surety, when the defendant knew that such statements were false, since an estoppel must be based upon fraud, and must be tortious. p. 149.

2. SAME.—*Married Woman's Enabling Act.*—*Common Law.*—*Estoppel.*—The married woman's enabling act (§§6960, 6962-6964 Burns 1901, 5115, 5117-5119 R. S. 1881) is in derogation of the common law and was designed for the benefit of married women and their estates, but not for the benefit of others, and the proper inquiry in a contract of a married woman is, did she receive the consideration either in person or in benefit to her estate, and no estoppel lies where the person dealing with her either knows or should have known the facts of the transaction. p. 150.

3. CONTRACTS.—*Lex Solutionis.*—Where a note is executed in Indiana, made payable in Indiana, and an attempt made to bind the contractor, a married woman, by the statutory law of estoppel of Indiana, and a mortgage is executed on lands in Missouri for the sole purpose of securing such note, such transaction is governed by the laws of Indiana. p. 151.

From Whitley Circuit Court; *Joseph W. Adair,* Judge.

Action by Matilda J. Sihler against the Ft. Wayne Trust Company. From a decree for plaintiff, defendant appeals. *Affirmed.*

*Vesey & Vesey, J. M. Barrett* and *S. L. Morris,* for appellant.

*H. C. Hanna, T. R. Marshall, Walter Olds* and *N. D. Doughman,* for appellee.

ROBINSON, P. J.—Transferred from the Supreme Court under the act of March 12, 1901. Suit by appellee to cancel a note and mortgage and to enjoin the assignment and transfer of the same.

Appellant assigns error upon overruling its motion for a new trial and upon the conclusions of law upon the facts found.

The facts are, substantially: Appellee is, and for seventeen years has been, the wife of Frederick W. Sihler, and from 1896 until July, 1902, she and her husband were *bona fide* residents of Ft. Wayne, Allen county, Indiana. On January 18, 1902, Frederick W. Sihler owned stock in the Ft. Wayne Drug Company of the par value of $10,000, Lamb Wire Fence Company stock of the value of $500, and Prickly Ash Bitters stock of the par value of $1,000, and at and prior to that date he was indebted to appellant between $2,000 and $3,000, for which indebtedness appellant held as collateral security $3,500 par value of Sihler's stock in the drug company; that he was indebted to the Old National Bank of Ft. Wayne in excess of $6,000, for which indebtedness the bank held as collateral security $6,500 par value of Sihler's stock in the drug company, and Lamb Wire Fence Company stock of the par value of $500, and Prickly Ash Bitters stock of the par value of $1,000; and he was indebted to the Ft. Wayne Drug Company in excess of $1,100. Henry C. Paul is now, and has been, since several years prior to January, 1902, a stockholder and president of the appellant, and for two years last past has been a stockholder and president of the Ft. Wayne Drug Company, and vice-president and a member of the auditing committee of the Old National Bank. At and

prior to January 18, 1902, the stock of the Ft. Wayne
Drug Company, including the stock held by Sihler and
held as collateral security, was worth only fifty per cent.
of the par value thereof. The stock held by appellant and
the bank as collateral was not of sufficient value to make
it good security for such debts, and the Ft. Wayne Drug
Company had no security for the debt owing to it by Sihler
on and prior to January 18, 1902, and at and prior to that
date Sihler was insolvent. Henry C. Paul, above men-
tioned, knew, at and before the above date, the amount
Sihler owed to appellant and to the bank, and the value
of the securities they held, and knew that such security
was insufficient, and also knew the amount that Sihler was
indebted to the Ft. Wayne Drug Company, and that it
had no security, and he further knew that Sihler was in-
solvent. For two years prior to January 18, 1902, Sihler
had been secretary and general manager of the Ft. Wayne
Drug Company at a salary of $2,000 per year. At and
prior to January 18, 1902, Henry C. Paul from time to
time requested Sihler to pay $1,100 of his indebtedness
to the drug company, and $1,000 each to the bank and to
appellant, and insisted that the amounts be paid. The
payment of such amounts would reduce Sihler's indebted-
ness to appellant and to the bank so as to make the collat-
eral held by them sufficient security for the remaining in-
debtedness, and the payment of $1,100 to the drug com-
pany would practically liquidate all of Sihler's indebted-
ness to it. On the 18th day of January, 1902, and for
ten years prior thereto, appellee owned lots thirty-five and
thirty-six, block eight, in Dundee Place addition to Kan-
sas City, in Jackson county, Missouri, which she had re-
ceived as a gift from her father, Christian F. G. Meyer,
a resident of Missouri. In December, 1901, Sihler in-
formed Paul that he expected Meyer would advance
$3,000, that he could and would use in payment of his
indebtedness to the drug company, the bank and appel-

lant; but none was sent. On and before January 18, 1902, Paul knew that appellee owned the above real estate, and that it was of greater value than $3,100, and that it was her own individual property.

On the above date, Paul, desirous of reducing Sihler's indebtedness to appellant, the bank and the drug company, and knowing that Sihler was insolvent, and had no property or money with which to make a payment or to secure any portion of it, requested Sihler to procure his wife (appellee) to execute her note for $3,100, payable to appellant, and to secure the same by mortgage on the Kansas City real estate, and that Sihler informed appellee that Paul said that if she would execute her note, and secure it by mortgage, appellant would hold it as temporary security, without recording, until Sihler could obtain money to pay the amount of such indebtedness, and that out of that sum he would pay $1,000 to appellant, $1,000 to the bank and $1,100 to the drug company; and that Sihler informed appellee of the request of Paul, and of his agreement to withhold the mortgage and not record it, and appellee upon that condition agreed to execute the note and mortgage; that thereupon Paul, being informed of appellee's consent to execute the note and mortgage, directed his attorneys to prepare the same for execution, and further directed them to secure appellee's signature to an affidavit that the money was borrowed on the mortgage for her sole use and benefit; that the note and mortgage were so drawn, and the mortgage signed by Frederick W. Sihler before any of the papers were presented to or signed by appellee. The note, mortgage and affidavit were then taken by a notary public to appellee's residence, and were signed by her. The note, signed by appellee alone, was dated January 18, 1902, for $3,100, payable to appellant on or before one year after date, with six per cent. interest, payable semiannually, negotiable and payable at the Ft. Wayne Trust Company. The mortgage signed by ap-

pellee and her husband is on the real estate above mentioned, and is given to secure the payment of the note for $3,100; and stipulates that for the purpose of inducing the mortgagee to make the loan thereby secured the mortgagors represent that their title is free from incumbrances, that the mortgagors, each for himself or herself, further represent that the mortgage is not made by Matilda J. Sihler as security, indorser or guarantor of the debt or other obligation of her husband or any other person, and the mortgagors agree to pay the sum of money so secured.

Appellee's affidavit states, among other things, that the money borrowed on the mortgage is for the sole and exclusive use and benefit of Matilda J. Sihler, and that the above statements are voluntarily made for the purpose of inducing appellant to loan her the sum of money represented by the bond and mortgage, and she further states that the bond and mortgage were by her voluntarily executed with full knowledge of the law and fact that she will be estopped from setting up any defense to the bond and mortgage by reason of the statements therein made; that after the execution of the note, mortgage and affidavit the notary advised Paul by telephone of the fact, who thereupon caused a check of appellant to be drawn on the Old National Bank, payable to the order of appellee, for $3,100, and to be delivered to Frederick W. Sihler, and requested that Sihler procure the indorsement of his wife upon the same, and return it to appellant; that Sihler immediately went to his residence and procured appellee to write her name upon the back of the check, and returned with it to the office of appellant, and at the request of appellant's secretary also signed his own name upon the back of the check, and delivered it to the secretary, who delivered to Sihler two checks of the appellant—one for the sum of $1,100 payable to the Ft. Wayne Drug Company, and one for $1,000 payable to the Old National Bank; which sums were credited on Sihler's indebtedness to the bank and the

drug company.  Appellee received no consideration whatever for the note or mortgage, and executed them solely as security for the debt of her husband.  At the time Paul requested the giving of the note and mortgage by appellee, and at the time they were executed, he and appellant knew that the note and mortgage were executed to pay the debts of appellee's husband, and that they were not given for money borrowed by appellee for her own use and benefit.  The $3,100 was applied in accordance with the agreement between Sihler and Paul, and was so applied before the actual delivery to appellant of the note, mortgage and affidavit.  Appellant is an Indiana corporation, with its principal office at the city of Ft. Wayne, in Allen county, Indiana.  No note or evidence of indebtedness or stock held as collateral was surrendered to Sihler or to the appellee by the appellant or by the bank or by any other person at the time of the execution of the note and mortgage.

Appellant has answered and defended this case upon the theory that the note and mortgage were given for money borrowed of appellant by appellee for her sole use and benefit, and that they were not executed as security for the debt of her husband or any other person.  Appellant and its officers knew at the time of the signing of the note and mortgage and when the money was paid out that the statement in the mortgage and affidavit to the effect that the debt was her debt, and that the note and mortgage were given for her sole use and benefit, and were not executed as security, indorser or guarantor for the debt or obligation of her husband or any other person, was untrue.  The note and mortgage were signed and delivered in Ft. Wayne, Allen county, Indiana, and the note is payable at the office of appellant in the same place.  Appellant knew when it issued its check for $3,100 to the appellee that she would immediately indorse the same, and that it would be used to pay the $1,000 to appellant, the $1,000 to the

bank and $1,100 to the drug company; and that knowing
this fact, although in a position to have inquired what ap-
pellee was buying of her husband, or what security, if any,
she was getting from her husband for such check, appellant
failed to make any inquiry of her upon that subject.   The
failure of appellant to talk with appellee touching such
transaction  arose from the fact that appellant had reason to
believe that such talk would disclose the fact that she was
executing the note and mortgage as security for her hus-
band, and not otherwise.   For many years appellee and
Henry C. Paul, president of appellant company, had been
intimate friends.   Paul was a man of large business inter-
ests, and he knew appellee had great reliance in his integ-
rity, and that she would sign any papers which Paul and
appellee's husband might send to her.   The mortgage upon
the Kansas City real estate was executed to secure the note
above mentioned, and not to secure any other or different
debt.   Appellant had the note and mortgage prepared so
that they would show upon the face that it was appellee's
debt and appellee's note which the mortgage secured, and
it was not intended, either upon its face, or by evidence
otherwise, that it should ever be shown that the mortgage
was executed and accepted by appellant as securing the
debt of the husband; that while the appellant knew that
the money was borrowed from it for the husband's benefit,
the appellant intended to put itself in a position to deny
that fact.   The affidavit was taken by appellant to be used
as evidence to show that the debt was the debt of the appel-
lee.   At the time of the execution of the mortgage and prior
thereto there was no contract between the parties as to the
true purpose and intention of the note and mortgage, and
it was appellee's intention to execute the mortgage for
her husband's debt, to be temporarily held by appellant,
and it was the intention of appellant to put itself in a
position where it could deny knowledge or means of knowl-

edge of appellee's intention with reference to the execution of the mortgage.

This suit was commenced on the 3d day of April, 1902. (The finding then sets out certain statutes of the state of Missouri which were in force on the 18th day of January, 1902.) The law of Missouri is that the signing of the name of the wife upon the back of a bank check payable to her order and delivering it to her husband is not a reducing of the wife's property to possession of the husband, and with her express consent passes no title to the husband. On the 8th day of February, 1902, appellee, her husband joining, sold and conveyed by deed of general warranty to her father, Christian F. G. Meyer, the real estate described in the mortgage in consideration of $7,500 to be paid by her father to her. There was no agreement by which the father should pay the mortgage above set out, or that he should pay any sum whatever to appellant out of the consideration which he agreed to pay for the real estate. After the commencement of this suit appellant commenced a suit in the circuit court of Jackson county, Missouri, for the foreclosure of the mortgage in controversy, which suit is now pending, and appellee and her husband and Meyer are parties defendant thereto. On the 2d of March, 1903, after this suit was commenced, appellant sold and assigned the note and mortgage to the City Bank of Lima, Ohio, and such bank at the time of purchasing the same had full knowledge of all of the facts in reference to the execution thereof and of the pendency of the suit in relation thereto, and delivered the same to the possession of appellant who brought the same into this court at the time of the trial, and they were offered and read in evidence. The law of Missouri is that the mortgage is simply collateral to the debt it is intended to secure, and if there is no debt there can be no valid mortgage; and if the note secured by the mortgage is invalid, the mortgage is invalid. In the suit now being prosecuted in Missouri

by appellant the complaint therein sets out the note, and avers that the mortgage was not made by appellee as security, indorser or guarantor of the debt or other obligation of her husband or any other person whatever. The answer in that suit sets out the statute of Indiana that a married woman shall not enter into any contract of suretyship, whether as indorser, guarantor, or any other manner, and such contract as to her shall be void, and avers that the note and mortgage were void as to Matilda J. Sihler, and that she neither contracted for nor received in person or estate the consideration for the note. That the reply in that suit sets out the affidavit above mentioned, and avers that thereby appellee is estopped from asserting or proving that the note and mortgage were for the purpose of entering into a contract of suretyship, and sets out the Indiana statute to the effect: "And she may in her own name, as if she were unmarried, at any time during coverture, sell, barter, exchange and convey her personal property; and she may also, in like manner, make any contracts with reference to the same; but she shall not enter into any executory contract to sell or convey or mortgage her real estate, nor shall she convey or mortgage the same, unless her husband join in the contract, conveyance or mortgage: Provided, however, that she shall be bound by an estoppel *in pais,* like any other person." §6962 Burns 1901, §5117 R. S. 1881. In executing the note and mortgage the parties to this suit were proceeding with reference to the laws of the State of Indiana. The only debt ever pretended to be secured by the mortgage was the alleged, but void, debt of the appellee as above stated.

As conclusions of law the court stated that the note and mortgage are void, and that appellee was entitled to have them canceled; that they should remain on file in that court; that appellant should be perpetually enjoined from assigning or transferring the note, or from further prosecuting the suit then pending in the state of Missouri, or from

prosecuting any suit for the purpose of collecting the note or foreclosing the mortgage.

1.   The statute (§6964 Burns 1901, §5119 R. S. 1881) provides that "a married woman shall not enter into any contract of suretyship, whether as indorser, guarantor, or in any other manner; and such contract, as to her, shall be void." The court found that appellee received no consideration whatever for the note or mortgage, and that she executed the same solely as security for the debt of her husband. But, it is argued, the mortgage contains a statement that the debt was hers, and that she also subscribed an affidavit that the debt secured by the mortgage was hers, and that by statute (§6962, *supra)* a married woman is bound by an estoppel *in pais,* like any other person.

It is quite true that a married woman has no more right to mislead another by her conduct or representations than if she were *sui juris.* But she is not subject to an estoppel different from any other person. She, like other persons, is not permitted to gainsay representations which have induced another, relying in good faith upon such representations, to act. The estoppel, however, in any case, must be predicated upon tort, and not upon contract. Some element of fraud or misrepresentation must enter into her conduct. If appellant had relied upon her statements in the mortgage and affidavit that the debt secured by the mortgage was her debt, a different question would be presented from that presented by the finding. It is found as a fact that the president of appellant requested the husband of appellee to procure his wife to execute the note and mortgage, and, the wife having consented, the president of appellant directed his attorneys to prepare the note, mortgage and affidavit which were afterwards signed by appellee. It is further found that at the time the officer of appellant requested the giving of the note and mortgage by appellee, and at the time the same were delivered to appellant, he and appellant knew that they were executed to pay the debts of appellee's husband, and that.

appellee would receive no part of the money; that they were not given for money borrowed by appellee for her own use; and that when the note and mortgage were signed and the money paid out appellant's officers knew that the statements in the mortgage and affidavit, to the effect that the debt was her debt, and that the note and mortgage were given for her own use, and not as security for her husband, were untrue. In view of these findings it is not at all material that the note and mortgage were so drawn that it would appear upon their face that it was appellee's debt and appellee's note that the mortgage secured.

2. That part of the act of April 16, 1881 (Acts 1881, p. 527), which is embraced in §§6960, 6962-6964 Burns 1901, §§5115, 5117-5119 R. S. 1881, was intended to remove the wife's disabilities for her protection and for the protection of her property. The statute is in derogation of the common law, and manifestly the intention was to secure to married women the benefit of their contracts, and not to remove their disabilities so as to enable them to make, for the benefit of others, contracts from which neither they nor their property would be benefited. The inquiry in such a case, no matter what the form of the contract, is whether the wife is to receive or did receive, either in person or in benefit to her estate, the consideration upon which the contract rests. The lender may successfully claim that she is estopped by her statements in, and as a part of, the contract, when such statements caused him to believe that a state of facts exists which does not, or that the transaction is different from what in fact it really is. If he knows the nature of the transaction, knows that she is attempting to bind herself or her property for the benefit of another, he must know that she is attempting what she has not the legal capacity to do. And when the lender indirectly procures the wife to enter into a contract for the express purpose of raising money to pay the husband's debts, and participates in applying the money thus raised to the payment of the

husband's debts, he is not in a position to claim that she is estopped from showing the true nature of the contract by any statement she may have made in the contract, no matter what the statements may have been.    See *Vogel* v. *Leichner* (1885), 102 Ind. 55; *Warey* v. *Forst* (1885), 102 Ind. 205; *Cupp* v. *Campbell* (1885), 103 Ind. 213; *Dudley* v. *Pigg* (1898), 149 Ind. 363; *Voreis* v. *Nusbaum* (1892), 131 Ind. 267, 16 L. R. A. 45; *Post* v. *Losey* (1887), 111 Ind. 74, 60 Am. Rep. 677; *Boyd* v. *Radabaugh* (1898), 150 Ind. 394; *Field* v. *Campbell* (1905), 164 Ind. —; *Cole* v. *Temple* (1895), 142 Ind. 498.

3.    It is further argued that the court failed to find, although shown by the uncontradicted evidence, that by the law of Missouri a married woman has capacity to mortgage her real estate to secure the debts of her husband.    Although the real estate mortgaged is in Missouri, yet from the note, mortgage and affidavit we think it clearly appears that the parties contracted with reference to the law of Indiana.    There is not only nothing to show that the parties had in view the law of any state other than Indiana, but the transaction shows an attempt was made to make a contract enforceable in this State.    See *Hall* v. *Cordell* (1891), 142 U. S. 115, 12 Sup. Ct. 154, 35 L. Ed. 956.    The parties resided in this State, the papers were all executed in this State, the note is payable in this State, and an attempt was made to bind appellee as a married woman under the laws of this State for the payment of the debt, and to estop her under the laws of this State from claiming that the consideration of the note was not for her separate use and benefit, but for the benefit of her husband.

In *Bethell* v. *Bethell* (1876), 54 Ind. 428, 23 Am. Rep. 650, the question was, whether a deed executed in Indiana, between citizens thereof, containing no covenants whatever according to the law of Indiana, could be held, by virtue of the law of Missouri, where the land lies, to contain a covenant not running with the land, but broken as soon as

entered into; and it was held that the law of Missouri, where the land was situated, could not extend into Indiana so as to incorporate covenants in the deed, and the law of the place of the contract governed the courts in determining whether or not the deed contained covenants of warranty or seizin. See, also, *Bethell* v. *Bethell* (1884), 92 Ind. 318; *Monnett* v. *Turpie* (1892), 132 Ind. 482; *Dolman* v. *Cook* (1861), 14 N. J. Eq. 56; *Andrews* v. *Torrey* (1862), 14 N. J. Eq. 355; *Kennedy* v. *Knight* (1867), 21 Wis. 345, 94 Am. Dec. 543.

In the case at bar it clearly appears that the contract was in every sense an Indiana contract, and, as the controlling question is as to appellee's capacity to make the contract, it should be governed by the laws of Indiana. See *Evans* v. *Beaver* (1893), 50 Ohio St. 190, 33 N. E. 643, 40 Am. St. 666; *Scudder* v. *Union Nat. Bank* (1875), 91 U. S. 406, 23 L. Ed. 245. Moreover, although the mortgage contains a promise to pay the debt secured, it appears from the findings that the mortgage is only an incident to the principal contract, which is the note. It is found that the mortgage was executed to secure the note sued on, and not to secure any other or different debt or evidence of indebtedness, and it is further found that appellee executed the mortgage with the agreement that it was to be a temporary security, and that the mortgage was not to be recorded. The promise to pay contained in the mortgage is a subsequent promise to pay the note secured. Under the findings the note is void for want of capacity in appellee to execute it, and when the note is declared void the mortgage lien ceases to be effective. See *Sherman* v. *Sherman* (1852), 3 Ind. 337; *Ledyard* v. *Chapin* (1855), 6 Ind. 320; *Francis* v. *Porter* (1855), 7 Ind. 213; *Fletcher* v. *Holmes* (1870), 32 Ind. 497; *Hubbard* v. *Harrison* (1871), 38 Ind. 323; *Gabbert* v. *Schwartz* (1880), 69 Ind. 450; *Tate* v. *Fletcher* (1881), 77 Ind. 102; *Bowman* v. *Mitchell* (1881), 79 Ind. 84.

Counsel for appellant cite the case of *Cochran* v. *Benton* (1890), 126 Ind. 58, where a husband and wife, residents of Kentucky, executed their joint note and a mortgage on the wife's lands situated in Indiana, and it is held to be a general rule that the power or capacity of a married woman to convey or encumber her separate real estate is to be determined by the law of the place where the property is situated. But in that case the court said: "If it appears that the contract, to secure the performance of which the mortgage was executed, or to which it was merely an incident, was expressly prohibited or declared void or illegal by the law of the place where it was executed and to be performed, we should have a different question, and one concerning which we intimate no opinion here." In the case at bar the findings show that appellee received no consideration whatever for the note; that she executed the note solely as security for the debt of her husband; and that the only purpose of the mortgage was to secure this note—that is, the contract, to secure the performance of which the mortgage was executed is expressly declared void by the law of the place where the contract was executed and to be performed. Nor do we think the case of *Nathan* v. *Lee* (1899), 152 Ind. 232, 43 L. R. A. 820, cited by appellant, declares any different rule from that held in this case. In that case an Ohio corporation executed notes to certain Ohio creditors, and afterwards, becoming insolvent, mortgaged land in Indiana to secure their payment. The mortgages were executed according to the laws of Indiana, and recorded in the county where the land was located. Afterwards a receiver for the corporation was appointed by an Indiana court, and in a suit by the receiver in that court the Ohio creditors, having been made parties defendant, filed a cross-complaint to enforce their mortgage liens. It was held that as the power of the corporation, under the circumstances, to make the mortgages, and thus prefer such creditors over others, was not denied by the Ohio statutes, the validity of the

mortgages was to be determined according to the law of Indiana, and that the situs of the mortgaged premises being in Indiana, it was evident, under the circumstances, that the parties at the time of the execution of the mortgage must have contemplated their enforcement, if necessary, in the courts of this State.   And the doctrine previously held was thère approved that, "when a citizen of another state is once properly in court and accepted as a suitor, neither the law nor the court administering the law will admit any distinction between such a suitor and one who is a resident or a citizen of its own state."

If the mortgage in the case at bar was incident to the note which was the principal contract, and the findings show this to be true, the trial court, having jurisdiction of the subject-matter and of the parties, had the power to declare the note void, and also to declare the mortgage void, and to decree their cancelation, and to enjoin appellants from attempting to enforce either the note or mortgage.   When this action was commenced the trial court had jurisdiction of the case for all purposes necessary to an adjudication of the rights of the parties before it in and concerning the subject-matter in dispute, and this jurisdiction could not be ousted by a suit subsequently brought in the court of another state.

Upon a careful consideration of the record, we think the findings are sustained by the evidence.   Judgment affirmed.